**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| APRIL CAREY<br>255 Hearthstone Road<br>King of Prussia, Pennsylvania 19406<br><br>Plaintiff,<br><br>v.<br><br>J.G. WENTWORTH MANAGEMENT COMPANY, LLC<br>1200 Morris Drive, Suite #320<br>Chesterbrook, PA 19087<br><br>THE J.G. WENTWORTH COMPANY<br>1200 Morris Drive, Suite #320<br>Chesterbrook, PA 19087<br><br>JGW DEBT SETTLEMENT, LLC t/a J.G. WENTWORTH<br>1200 Morris Drive, Suite #320<br>Chesterbrook, PA 19087<br><br>and<br><br>RED APPLE MANAGEMENT COMPANY, LLC<br>1200 Morris Drive, Suite #320<br>Chesterbrook, PA 19087<br><br>Defendants. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

**<u>COMPLAINT</u>**

**PARTIES**

1. Plaintiff is April Carey ("Carey" or "Plaintiff"), an adult individual resident of the Commonwealth of Pennsylvania with an address of 255 Hearthstone Road, King of Prussia, Pennsylvania 19406.

2. Defendants (collectively, the "Company") herein are:

a. J.G. Wentworth Management Company, LLC, a Delaware limited liability company with a principal place of business at 1200 Morris Drive, Suite 320, Chesterbrook, Pennsylvania 19087;

b. The J.G. Wentworth Company, a Delaware limited liability company with a principal place of business at 1200 Morris Drive, Suite 320, Chesterbrook, Pennsylvania 19087;

c. JGW Debt Settlement, LLC t/a J.G. Wentworth, a Nevada limited liability company with a principal place of business at 1200 Morris Drive, Suite 320, Chesterbrook, PA 19087; and

d. Red Apple Management Company, LLC, a Delaware limited liability company with a principal place of business at 12 Morris Drive, Suite 320, Chesterbrook, PA 19087.

3. At all times relevant hereto, the Company was acting through its respective officers, directors, employees and/or agents.

4. At all times relevant hereto, Plaintiff met the definition of an "eligible employee" under the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA") as she had been employed by the Company for more than twelve months and worked at least 1,250 hours during the 12 months immediately preceding the start of the leave under the FMLA.

5. At all times relevant hereto, Plaintiff met the definition of an "employee" as defined under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101 *et seq*.

6. At all times relevant hereto, the Company met the definition of an "employer" as that term is defined under the FMLA, as it employed 50 or more employees in 20 or more workweeks in the applicable calendar year.

7. At all relevant times, the Company was an entity engaged in an industry affecting commerce having four or more employees within the Commonwealth and was an "employer" as defined under the PHRA.

8. At all relevant times, the Company was an "employer" as that term is defined under the ADA, as it employs 15 or more employees in an industry affecting commerce.

9. At all relevant times, Plaintiff was employed by the Company as a Team Manager of Inside Sales.

## JURISDICTION

10. This action arises under the FMLA, PHRA, and ADA.

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the claims are substantively based on ADEA, the ADA and FMLA.

12. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 as to Plaintiff's claims under the PHRA.

13. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 as Plaintiff was employed in Chesterbrook, Pennsylvania.

14. All conditions precedent to suit have been satisfied, as:

a. On or about August 1, 2024, Plaintiff dual filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC").

b. More than one year has lapsed since the filing of the charge with PHRC.

c. On August 20, 2025, the EEOC issued a Notice of Right to Sue. This filing is made within 90 days of receipt of the EEOC's Notice of Right to Sue.

## FACTS

15. Plaintiff began working for the Company in 2014.

16. In October of 2018, Plaintiff was promoted to be a Team Manager of Inside Sales.

17. Plaintiff received excellent reviews for her performance as a Team Manager of Inside Sales.

18. Plaintiff had never been reprimanded or put on an improvement plan.

19. Plaintiff built up a substantial book of business, making her a major contributor to the Company.

20. In 2022, Carey was the third highest producer on her floor.

21. In 2023, Carey was the fifth highest producer on her floor.

22. In August of 2023, the Company recognized Carey's significant contributions by naming her Representative of the Month.

23. On September 28, 2023, Plaintiff notified Marisol Latimer from Human Resources and Whitney Ruland Vice President of Purchasing that she intended to take time away beginning October 24, 2023, to undergo Bariatric Surgery.

24. The surgery required that Plaintiff be admitted to the hospital for inpatient treatment.

25. Plaintiff requested that the Company provide her with the proper paperwork to apply for FMLA and Short-Term Disability.

26. On October 18, 2023, Plaintiff submitted her FMLA paperwork.

27. The effective start date of her FMLA leave was October 24, 2023.

28. Plaintiff intended to return to work on November 1, 2023.

29. Plaintiff underwent surgery on October 24, 2023.

30. After undergoing the surgery, Plaintiff extended her leave through November 17, 2023, due to serious complications including dehydration, abdominal pain, and blood pressure issues which required continuing treatment under supervision of a healthcare provider.

31. Due to further complications, Plaintiff was readmitted to the hospital for inpatient treatment from November 22, 2023, through November 30, 2023 due to further complications, including acid reflex that caused hospitalization, narrowing of the stomach and malnourishment.

32. From the end of November until the end of December, Plaintiff required a peripherally inserted central catheter (PICC) line which provided her which nutrition. The PICC line required continuing treatment under the supervision of healthcare providers, including visiting nurses, weekly doctors' appointments and bloodwork.

33. On December 4, 2023, FMLA paperwork was completed (including obtaining a provider's certification) to extend Plaintiff's FMLA benefits with an expected return date of December 21, 2023. During this time, Plaintiff required continuing treatment under supervision of healthcare providers for her serious health condition.

34. This return date was later postponed to January 3, 2024 due to the ongoing serious health condition which required continuing treatment under supervision of a healthcare provider.

35. The Bariatric Surgery and the resulting complications constituted a serious health condition as that term is defined under the FMLA, in that it was an illness, injury, impairment, or physical or mental condition involving inpatient care in a hospital, and/or in that it involved at least three consecutive days of incapacity and subsequent multiple treatments by a healthcare provider and/or by a provider of health care services under orders of health care provider, including physical therapy and occupational therapy.

36. The complications resulting from her bariatric surgery constituted disabilities as that term is defined under the ADA and PHRA and ADA, in that Carey had one or more physical impairments which substantially impaired one or more of her major life activities, had a record of such impairment, and/or was perceived as having such impairment.

37. Plaintiff kept the Company apprised of her serious health condition and need for FMLA leave and reasonable accommodation under the PHRA and ADA.

38. Plaintiff's return to work paperwork was submitted to the Company on January 2, 2024 by her medical provider.

39. On January 3, 2024, Plaintiff returned to work from her FMLA-designated leave of absence and met with Whitney Ruland and William Schwartz.

40. The FMLA requires employers to return employees to the same or an equivalent position with "equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614.

41. However, Whitney Ruland informed Plaintiff that she would not be reinstated to her role; Plaintiff was being demoted.

42. As part of this demotion, Plaintiff's duties were taken from her, and her compensation was reduced by more than $4,000.00 per month.

43. Plaintiff was also moved from being a salaried employee to being an hourly employee.

44. Plaintiff was given several explanations for this demotion including that there was a corporate restructuring, that Plaintiff was not a "nurturing" manager, that her job was being eliminated, and that the representatives under Plaintiff were not producing at an appropriate level.

45. Prior to her FMLA leave, Plaintiff had not heard any feedback like this.

46. Curiously, the Company hired a new Team Manager of Purchasing at the same time as Plaintiff's demotion.

47. Responsibilities that had been part of Plaintiff's role could now be reallocated to this new manager.

48. Plaintiff was shocked by the demotion, as she had never had any reprimands, poor reviews, or other negative feedback.

49. In fact, Carey had been the fifth highest producer in 2023, despite being hospitalized for a portion of the year.

50. In addition to the demotion, the Company had revoked Plaintiff's entire book of business sometime between November 30, 2023 and December 1, 2023 – a book that she had spent five years cultivating.

51. A bare examination of the facts demonstrates the pretextual nature of the reasons for Plaintiff's demotion.

52. Plaintiff was given no warning prior to her demotion.

53. The Company was aware that Plaintiff's leave of absence had been designated as an FMLA leave of absence.

54. Quite obviously the reasoning of the Company for Plaintiff's demotion is pretextual and solely designed to justify their desire to demote Plaintiff.

55. Plaintiff continued to work for the Company in this lesser role.

56. On February 24, 2024, Carey was readmitted to the hospital for inpatient treatment due to a bleeding ulcer.

57. She returned to the office on February 29, 2024.

58. The Company hired two additional Team Managers at the end of February.

59. In February, Carey was written up for poor production for her January performance.

60. In fact, the reason that Carey's production was reduced in January was because her entire book of business had been revoked.

61. From March 2, 2024 through April 30, 2024, Carey was intermittently readmitted to the hospital for inpatient treatment, including reinsertion of her PICC line, and on short term disability.

62. She returned to the office on or about May 1, 2024.

63. On May 30, 2024, the Company terminated Carey.

64. Carey was shocked by this termination as she had always received excellent feedback.

65. The two additional Team Managers hired in February were able to take over the work that Carey had been performing in her reduced role.

66. Carey's reduced production was due to the fact that the Company revoked her book of business.

67. A bare examination of the facts demonstrates the pretextual nature of the reasons for Carey's demotion and subsequent termination.

68. Upon information and belief, the Company treats similarly situated employees who do not seek FMLA leave and/or who do not have disabilities more favorably.

69. Plaintiff is certain that the true intent of the Company was to replace her with someone healthier, who did not utilize FMLA protections, and who was not disabled and/or perceived as disabled, despite the fact that Plaintiff was excellent at her job.

70. The actions of the Company constitute a violation of the FMLA, PHRA and the ADA.

**COUNT I**
**<u>Disability Discrimination Under the PHRA</u>**
**(Carey v. the Company)**

71. The foregoing paragraphs are incorporated as if set forth herein at length.

72. Prior to and continuing until on or about May 30, 2024, the Company, through its agents, servants and employees, subjected the Plaintiff to discrimination on the basis of her actual and/or perceived disability and/or record of impairment (bariatric surgery and complications arising from recovery from bariatric surgery).

73. During the course of her employment, Carey was a member of a protected class under the PHRA in that she suffered from a physical impairment that substantially impaired one or more of her major life activities, had a record of such impairment, and/or was perceived as having such impairment.

74. At all relevant times, the Company was a covered employer under the PHRA.

75. Carey was qualified for the position and was able to perform its essential functions.

76. In January 2024, the Company removed Carey from her position due to her disability and replaced her with non-disabled persons.

77. In May 2024, the Company terminated Carey and replaced her with non-disabled persons.

78. Upon information and belief, the Company treated similarly situated employees without disabilities more favorably.

79. The Company failed to properly engage in the interactive process and wrongfully demoted Carey, and then terminated her employment, which constitutes unlawful disability discrimination in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*

80. As a result of the unlawful conduct, Plaintiff has suffered damages, and she accordingly seeks an award of all remedies available under the PHRA, including back pay, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees, costs and interest.

WHEREFORE, April Carey demands judgment in her favor and against J.G. Wentworth Management Company, LLC, The J.G. Wentworth Company, JGW Debt Settlement, LLC t/a J.G. Wentworth and Red Apple Management Company, LLC, together with all remedies under the FMLA, including back pay, front pay, liquidated damages, attorney fees, costs, and interest, together with such other relief as the Court deems appropriate.

**COUNT II**
**Disability Discrimination Under the ADA**
**(Carey v. the Company)**

81. The foregoing paragraphs are incorporated as if set forth herein at length.

82. During the course of her employment, Carey was a member of a protected class under the ADA in that she suffered from a physical impairment that substantially impaired one or more of her major life activities, had a record of such impairment, and/or was perceived as having such impairment.

83. At all relevant times, the Company was a covered employer under the ADA.

84. Carey was qualified for the position and was able to perform its essential functions.

85. In or around January 2024, the Company removed Carey from her position due to her disability and replaced her with non-disabled persons.

86. In May 2024, the Company terminated Carey and replaced her with non-disabled persons.

87. Upon information and belief, the Company treated similarly situated employees without disabilities more favorably.

88. The Company failed to properly engage in the interactive process and wrongfully terminated Carey’s employment, which constitutes unlawful disability discrimination in violation of the Americans with Disabilities Act.

89. As a result of the unlawful conduct, Carey has suffered damages, and she accordingly seeks an award of all remedies available under the ADA, including back pay, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees, costs and interest.

WHEREFORE, April Carey demands judgment in her favor and against J.G. Wentworth Management Company, LLC, The J.G. Wentworth Company, JGW Debt Settlement, LLC t/a J.G. Wentworth and Red Apple Management Company, LLC, together with all remedies under the FMLA, including back pay, front pay, liquidated damages, attorney fees, costs, and interest, together with such other relief as the Court deems appropriate.

**COUNT III**
**Violations of the Family Medical Leave Act**
**(Interference and Retaliation)**

90. The foregoing paragraphs are incorporated herein as if set forth in full.

91. At all relevant times, Plaintiff was an FMLA-eligible employee as she worked (1) for the Company for at least 12 months; (2) at least 1,250 hours for the Company in the twelve months prior to the start of the FMLA leave, and (3) at a location where at least 50 employees were employed within a 75-mile radius.

92. At all relevant times, the Company met the definition of an "employer" under the FMLA as it had 50 or more employees during the current and/or preceding calendar year.

93. Plaintiff underwent Bariatric Surgery and experienced related complications, all of which are serious health conditions which required inpatient care in a hospital, and continuing treatment by healthcare providers.

94. As a result of the serious health conditions, Plaintiff sought FMLA leave, which is a protected activity under the statute.

95. Plaintiff suffered from serious adverse complications, which also constitute serious health conditions as defined by the FMLA as they required inpatient care in a hospital, and continuing treatment by healthcare providers.

96. Plaintiff further engaged in a protected activity when she sought to return to her position.

97. However, on January 3, 2024, Defendant violated the FMLA by unlawfully interfering with, restraining, and/or denying the exercises of Plaintiff's FMLA rights by denying her reinstatement to her role following the exercise of her FMLA rights, including a request for leave and a request for reinstatement.

98. Specifically, Plaintiff was denied reinstatement to her role upon returning from FMLA leave and was demoted. Her demotion included a reduction and duties and a significant reduction in compensation.

99. She was also informed that her book of business had been revoked.

100. Such revocation and demotion constituted an adverse job action and denied Plaintiff of benefits she was entitled to under the FMLA.

101. In light of the facts and circumstances leading up to Plaintiff's demotion, Plaintiff avers that the Company interfered with her FMLA rights.

102. Further, the Company retaliated against Plaintiff due to her request for leave and for reinstatement, and terminated her employment.

103. As a direct and proximate result of the Company's actions, Plaintiff has suffered damages and she accordingly seeks an award of all remedies available under the FMLA, including back pay, front pay, liquidated damages, attorney fees, costs prejudgment and post-judgment and interest.

104. The Company's unlawful action constitutes bad faith, malicious, willful, and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

WHEREFORE, April Carey demands judgment in her favor and against J.G. Wentworth Management Company, LLC, The J.G. Wentworth Company, JGW Debt Settlement, LLC t/a J.G. Wentworth and Red Apple Management Company, LLC, together with all remedies under the FMLA, including back pay, front pay, liquidated damages, attorney fees, costs, and interest, together with such other relief as the Court deems appropriate.

**CURLEY & ROTHMAN, LLC**

Date: 10.15.2025

By: /s Charles V. Curley
Charles V. Curley, PA ID No. 60486
Kelle A. Kilgarriff, PA ID No. 205976
1100 E. Hector Street, Suite 425
Conshohocken PA 19428
610 834 8819
*Attorneys for Plaintiff*